AO93 Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

| | |
|---|---|
| In the Matter of the Search of <br> (1) a Samsung SM-N920T cellular telephone, serial number RF8GB229YYV and (2) a Samsung SM-N920T cellular telephone, serial number RF8H11HLXSJ. | Case No.  ⅓1-071 MB |

### SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

### As further described in Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

### As set forth in Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before *April 2, 2021* (*not to exceed 14 days*)
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☒ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to <u>any United States Magistrate Judge on criminal duty in the District of Arizona.</u>

N/A ☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for _30_ days (*not to exceed 30*) ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: *March 18, 2021 @ 3:45 pm*          *Michelle Burns*
                                                                            *Judge's signature*

City and state: <u>Phoenix, Arizona</u>          <u>Honorable MICHELLE H. BURNS, U.S. Magistrate Judge</u>
                                                                            *Printed name and title*

## ATTACHMENT A

The property to be searched is (1) a Samsung SM-N920T cellular telephone, serial number RF8GB229YYV and (2) a Samsung SM-N920T cellular telephone, serial number RF8H11HLXSJ (hereinafter "Subject Devices"), seized from Robert EVANS on June 7, 2017, in Phoenix, Arizona and currently held in evidence by Homeland Security Investigations.

This warrant authorizes the forensic examination of the Subject Devices for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**
*DESCRIPTION OF ITEMS TO BE SEIZED*

All records within the Subject Devices described in Attachment A that relate to violations of Title 18, United States Code, Sections 1028, 1028A, 1029, 1030, 1344, 1349, 1644, and 1957 (the "Subject Offenses"), committed by Evans and others known and unknown (the "Target Subjects"), between January 1, 2015, and the present, including:

a.  Records, documents, programs, applications, or materials from financial institutions such as banks, money remitters, brokerage houses, finance companies, car dealerships, and credit card companies.

b.  Records, documents, programs, applications, or materials containing indicia of ownership of the Subject Devices, this includes evidence of who used, owned, or controlled the Subject Device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, chat and instant messaging logs, photographs, and correspondence.

c.  All mail matter in names other than Evans.

d.  Records, documents, programs, applications, or materials relating to credit reports, identity profiles, victim information (such as names, social security numbers, phone numbers, addresses, bank account numbers, checks, driver's license numbers, identification cards, credit cards, credit card numbers, CVV s, and credit card statements), or which relate to methods of acquiring such information (including items such as internet database programs).

e.  Records, documents, programs, applications, or materials containing receipts or invoices for credit card purchases or activity.

f.  Records, documents, programs, applications, or materials relating to investigations of the Subject Offenses.

1

g.  Records, documents, programs, applications, or materials relating to wealth acquired since January 1, 2015, including documents referring or relating to bank statements or investment accounts, wire transfers, purchases over $500, and the ownership or leasing of vehicles or real property.

h.  Records, documents, programs, applications, or materials relating to airline tickets and reservation information, and flight itineraries.

i.  Address books, names and other contact information, including stored or saved telephone numbers, addresses, and email addresses.

j.  Call log information, as well as all received or missed incoming calls.

k.  Short Message Service ("SMS") texts, Multimedia Messaging Service ("MMS"), instant messaging services, "chat" and other methods of communication sent or received relating to the Subject Offenses and/or the Target Subjects.

l.  Emails sent or received relating to the Subject Offenses and/or the Target Subjects.

m.  Voicemails (or other recorded audio/video messages) sent or received relating to the Subject Offenses and/or the Target Subjects.

n.  Photographs or videos of individuals, documents, or other records, places, and information relating to the Subject Offenses and/or the Target Subjects.

o.  Global Positioning System ("GPS") coordinates and other information or records identifying travel routes, origination points, destinations, and other locations.

p.  Evidence of the presence or absence of software that would allow others to control the Subject Devices, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software.

q.  Evidence of the attachment of other devices.

2

r.    Evidence of counter-forensic programs (and associated data) designed to eliminate data from the Subject Devices.

s.    Passwords, encryption keys, and other access devices, as well as applications, utility programs, compilers, interpreters, other software, documentation, and manuals that may be necessary to access the Subject Devices or to conduct a forensic examination of it.

t.    Records of, or information about, the Subject Device's Internet activity, including Internet Protocol addresses accessed, firewall logs, caches, browser history, and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>(1) a Samsung SM-N920T cellular telephone, serial number RF8GB229YYV and (2) a Samsung SM-N920T cellular telephone, serial number RF8H11HLXSJ. | Case No. 21-071 MB |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

### As further described in Attachment A

located in the District of Arizona, there is now concealed:

### As set forth in Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 18 U.S.C. § 1028 | ID Theft |
| 18 U.S.C. § 1028A | Aggravated ID Theft |
| 18 U.S.C. § 1029 | Access Device Fraud |
| 18 U.S.C. § 1030 | Computer Fraud |
| 18 U.S.C. § 1344 | Bank Fraud |
| 18 U.S.C. § 1349 | Conspiracy |
| 18 U.S.C. § 1644 | Fraudulent Use of Credit Cards |
| 18 U.S.C. § 1957 | Money Laundering |

The application is based on these facts: **See attached Affidavit of Special Agent Jonathan H. Abend**

☒ Continued on the attached sheet.
☐ Delayed notice of _30_ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA CAITLIN NOEL *CBN*

JONATHAN H ABEND   Digitally signed by JONATHAN H ABEND
Date: 2021.03.18 14:36:04 -07'00'

*Applicant's Signature*

JONATHON H. ABEND, HSI Special Agent
*Printed name and title*

Sworn to before me telephonically.

Date: March 18, 2021

*Judge's signature*

City and state: Phoenix, Arizona

Honorable MICHELLE H. BURNS, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

The property to be searched is (1) a Samsung SM-N920T cellular telephone, serial number RF8GB229YYV and (2) a Samsung SM-N920T cellular telephone, serial number RF8H11HLXSJ (hereinafter "Subject Devices"), seized from Robert EVANS on June 7, 2017, in Phoenix, Arizona and currently held in evidence by Homeland Security Investigations.

This warrant authorizes the forensic examination of the Subject Devices for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**
*DESCRIPTION OF ITEMS TO BE SEIZED*

All records within the Subject Devices described in Attachment A that relate to violations of Title 18, United States Code, Sections 1028, 1028A, 1029, 1030, 1344, 1349, 1644, and 1957 (the "Subject Offenses"), committed by Evans and others known and unknown (the "Target Subjects"), between January 1, 2015, and the present, including:

a.  Records, documents, programs, applications, or materials from financial institutions such as banks, money remitters, brokerage houses, finance companies, car dealerships, and credit card companies.

b.  Records, documents, programs, applications, or materials containing indicia of ownership of the Subject Devices, this includes evidence of who used, owned, or controlled the Subject Device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, chat and instant messaging logs, photographs, and correspondence.

c.  All mail matter in names other than Evans.

d.  Records, documents, programs, applications, or materials relating to credit reports, identity profiles, victim information (such as names, social security numbers, phone numbers, addresses, bank account numbers, checks, driver's license numbers, identification cards, credit cards, credit card numbers, CVV s, and credit card statements), or which relate to methods of acquiring such information (including items such as internet database programs).

e.  Records, documents, programs, applications, or materials containing receipts or invoices for credit card purchases or activity.

f.  Records, documents, programs, applications, or materials relating to investigations of the Subject Offenses.

1

g. Records, documents, programs, applications, or materials relating to wealth acquired since January 1, 2015, including documents referring or relating to bank statements or investment accounts, wire transfers, purchases over $500, and the ownership or leasing of vehicles or real property.

h. Records, documents, programs, applications, or materials relating to airline tickets and reservation information, and flight itineraries.

i. Address books, names and other contact information, including stored or saved telephone numbers, addresses, and email addresses.

j. Call log information, as well as all received or missed incoming calls.

k. Short Message Service ("SMS") texts, Multimedia Messaging Service ("MMS"), instant messaging services, "chat" and other methods of communication sent or received relating to the Subject Offenses and/or the Target Subjects.

l. Emails sent or received relating to the Subject Offenses and/or the Target Subjects.

m. Voicemails (or other recorded audio/video messages) sent or received relating to the Subject Offenses and/or the Target Subjects.

n. Photographs or videos of individuals, documents, or other records, places, and information relating to the Subject Offenses and/or the Target Subjects.

o. Global Positioning System ("GPS") coordinates and other information or records identifying travel routes, origination points, destinations, and other locations.

p. Evidence of the presence or absence of software that would allow others to control the Subject Devices, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software.

q. Evidence of the attachment of other devices.

2

r.  Evidence of counter-forensic programs (and associated data) designed to eliminate data from the Subject Devices.

s.  Passwords, encryption keys, and other access devices, as well as applications, utility programs, compilers, interpreters, other software, documentation, and manuals that may be necessary to access the Subject Devices or to conduct a forensic examination of it.

t.  Records of, or information about, the Subject Device's Internet activity, including Internet Protocol addresses accessed, firewall logs, caches, browser history, and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

1.      I, Jonathan H. Abend, Special Agent of the United States Department of Homeland Security, being duly sworn, declare and state:

## INTRODUCTION AND BACKGROUND OF AFFIANT

2.      Your Affiant has been employed by the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) since April 2016. Your Affiant graduated the Criminal Investigator Training Program (CITP) and the Homeland Security Investigations Special Agent Training (HSI-SAT) program, both located at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. These trainings included extensive instruction in the areas of, among other topics, immigration law, customs law, financial and cybercrime, firearms training, Rules of Evidence, and interview techniques. Your Affiant is assigned to the HSI Office in Phoenix, Arizona.

3.      Your Affiant has participated in criminal investigations that have resulted in the arrests of individuals and the seizure of related evidence. Your Affiant has participated in and/or executed search and seizure warrants authorizing the search of locations used by participants in illicit activities and their co-conspirators as well as vehicles used to facilitate illicit activities. Materials searched for and recovered in these locations have included the following: smuggled aliens, illicit narcotics, documentary records and ledgers, weapons, documents reflecting the identity of co-conspirators, and receipts for concealed investments and proceeds derived from illicit activities. During these investigations, your Affiant has participated in interviewing witnesses and cooperating sources and has read official reports of similar interviews by other officers. Your Affiant has also participated in surveillance operations, observing and recording movements of persons suspected of, or engaged in, various criminal activities.

4.      In preparing this Affidavit, your Affiant has conferred with other Special Agents and law enforcement officials, who share the opinions and conclusions stated herein. The statements contained in the Affidavit are based on information derived from

your Affiant's personal knowledge and observations; information derived from the personal knowledge and observations of other sworn law enforcement officials, either directly or indirectly through their reports or affidavits; surveillance conducted by law enforcement officials; information provided by a confidential source; analysis of public records; controlled purchases of drugs; and analysis of financial and business documents. Because this Affidavit is submitted for the limited purpose of establishing probable cause to search the items further described in Attachment A, and seize the items further outlined in Attachment B, it does not include all of the relevant facts known to law enforcement agents.

## PURPOSE OF AFFIDAVIT

5.      The purpose of this Affidavit is to seek authorization to search a Samsung cellular phone bearing serial number RF8GB229YYV, and a Samsung cellular phone bearing serial number RF8H11HLXSJ, as further described in Attachment A, in order to search for and seize items of evidence, as further outlined in Attachment B. The evidence is related to violations, among others, of 18 U.S.C. § 1028 (ID Theft/Fraud), 18 U.S.C. § 1028A (Aggravated ID Theft), 18 U.S.C. § 1029 (Access Device Fraud), 18 U.S.C. § 1030 (Computer Fraud), 18 U.S.C. § 1344 (Bank Fraud), 18 U.S.C. § 1349 (Conspiracy), 18 U.S.C. § 1644 (Fraudulent Use of Credit Cards), and 18 U.S.C. § 1957 (Money Laundering). The Subject Devices are currently held by HSI having been seized from Robert Rahiem EVANS (EVANS) on June 7, 2017 at the time of his arrest in Phoenix, Arizona.

## USE OF ELECTRONIC DEVICES IN FRAUD SCHEMES

6.      Through investigations, training, experience, and discussions with other law enforcement personnel, your Affiant is familiar with the tactics and methods used by people involved with bank fraud schemes and/or identity theft schemes. This includes tactics and methods used to collect, conceal, and launder proceeds derived from the illicit activities. Some tactics and methods include, but are not limited to, the use of the internet, computers, cellular telephones, cloned communication devices, digital paging devices, debit calling

cards, public pay phones, and other communication devices to communicate about fraud related activities, as well as the use of counter-surveillance techniques, false or fictitious identities, coded communications and coded words in conversations to conceal these activities.

7.      Your Affiant knows that people involved in fraud often use digital devices such as computers, computer-related media, and cellular phones to covertly contact co-conspirators and victims, in an effort to avoid detection by law enforcement.   Digital devices also provide relative anonymity, by allowing these individuals to conduct these actions electronically, over the Internet.   Digital devices allow these individuals to (1) maintain names, addresses, and telephone number of co-conspirators, customers, suppliers of identity profiles, and/or victims of the fraud scheme; (2) purchase or obtain Personally Identifiable Information (PII) belonging to other people, or other items such as profiles, trade lines, or credit reports; (3) establish or modify fraudulent bank accounts or credit card accounts; (4) use fraudulently obtained bank accounts or credit card accounts to make purchases, including purchases for additional personal identifying information; and (5) track and keep records of their crimes, such as pay/owe records for the fraud scheme.   The devises commonly retain records of communications like incoming and outgoing calls, voicemails, text messages, and emails.   Your Affiant knows that individuals use text messages and emails to send photographs or videos of individuals, documents, and other records relating to the fraud or identity theft scheme.

## BASIS FOR PROBABLE CAUSE

8.      On June 5, 2017, Agents in the Phoenix Office received a collateral investigation request related to an ongoing drug trafficking investigation involving EVANS.   On June 7, 2017, EVANS was arrested while transporting approximately two (2) kilograms of heroin in a vehicle. Numerous documents containing PII and computer printouts detailing bank accounts were found in plain sight in the vehicle. These and other miscellaneous documents were seized for evidentiary purposes.

9.      During a post-Miranda interview, EVANS claimed ownership of all contents

of the vehicle. EVANS consented both verbally and in writing to a search of one of the two Samsung cellular phones found in his possession. During a preliminary search of the phone (serial number RF8GB229YYV), Agents observed several images including packaged bundles wrapped in a manner consistent with methods utilized by drug traffickers for smuggling and/or transport of illicit drugs.  When asked if the pictures in question were in fact drugs, EVANS stated that they were. The two cellular phones and a Samsung tablet device were seized for further investigation.

10.     At the close of the interview, EVANS requested that the vehicle be turned over to the registered owner, Sharilyn TAYLOR (TAYLOR), whom EVANS described as his girlfriend.  EVANS stated that TAYLOR could be reached via her cell phone, which was listed under the contacts in his cellular phone as "Ms K".  Agents made contact with TAYLOR at that number and arranged for her to retrieve the vehicle. TAYLOR arrived, provided her Arizona Driver's License as verification of her identity, and recovered the vehicle.

11.     On June 14, 2017, a search warrant (SW2017-005968; Maricopa County Superior Court) was executed on EVANS' two cellular phones and the tablet device seized during his arrest to gather evidence of drug trafficking and related financial transactions including but not limited to payments and money laundering of proceeds. The data download reports listed extensive text conversations between EVANS and numerous contacts regarding bank account and routing numbers, bank transfers, and discussions about large sums of money.  Numerous text messages displayed the exchange of PII including names, social security numbers, dates of birth, addresses, and the Fair Isaac Company (FICO) scores of individuals throughout the United States. Text conversations also included credit card numbers with three-digit card verification value (CVV) numbers, along with cardholder information in some cases. Other text messages contained a variety of bank account and routing numbers relating to at least sixteen (16) different banking corporations and credit unions.  In some instances, PII information was typed as a text message and in other exchanges, digital photographs of handwritten notes were

transmitted. Within the text conversations, EVANS and others discussed transmitting documents, PII material, and images including inferences to fraudulent identification documents and bank statements via email.

12.     Over a five-month period in 2016, there were extensive text conversations between EVANS and a contact listed as "Ms K" discussing steps to obtain checks and then how to mail them via express carrier and cash them.  The conversations indicated that "Ms K" was improperly obtaining the checks from her place of employment.   "Ms K" reported details to EVANS including the number of checks obtained, details about the values of the checks, and asked for direction from EVANS.  The text messages made it clear that the primary recipient of the checks was a contact named "Clarence" located in Ohio.  "Ms K" also notified EVANS of stop payment requests placed on some of the checks and advised him to warn "Clarence" in this regard.  For example, "Ms K" told EVANS that an investigation had been initiated regarding check number 768511 in the amount of $7,591.23, which had been cashed at a Citizen's Bank location; "Ms K" warned that EVANS should inform "Clarence" to "give him a heads up."  Furthermore, "Clarence" appeared to regularly report the results of his activities related to receiving and cashing the checks to EVANS.

13.     At the time of his arrest in June 2017, EVANS was in possession of eighty (80) Bank of America (BOA) screen printouts of account summaries.  These screen printouts were detailed summaries utilized by bank customer service employees that were typically accessed through internal BOA computer systems. The summaries included account holder PII, account numbers, monetary balances, credit limits and other confidential information.  TAYLOR, who was listed as "Ms K" in EVANS' phone contacts, was a former employee of BOA prior to her termination in September 2016 following an internal BOA investigation.   The BOA screen printouts in EVANS' possession were authenticated by BOA and confirmed to have originated from a terminal utilized by TAYLOR.

14.     EVANS was charged with transporting a narcotic drug for sale in Maricopa

County Superior Court Case No. CR2017-126379. Following his release on bond in June 2017, EVANS fled Arizona.

15.     In October 2017, a Source of Information (SOI), advised law enforcement that EVANS had an "insider" at BOA who assisted EVANS by transferring money into bank accounts controlled by EVANS and/or co-conspirators, likely through obtaining fraudulent loans and/or opening lines of credit without authorization. The SOI further advised that EVANS would contact the SOI using EVANS' phone number (404) 645-1545, which was later confirmed to be associated with a phone belonging to EVANS. The SOI allowed investigators to monitor and record telephone and messaging activity on the SOI's cell phone.

16.     There are forty-eight (48) recorded phone calls between EVANS and the SOI from November 18, 2017, and January 19, 2018. During these communications, EVANS requested counterfeit identifications, provided PII for victims, credit card number, and three-digit Card Verification Value (CVV). In the communications, EVANS talks about various fraud schemes and how the SOI could help obtain funds. EVANS discussed at least three (3) different schemes including:

a.     Vehicle Loan Scheme: EVANS would obtain loans above the maximum value of the vehicle using other people's PII. Using colluding car dealers, EVANS would convert some of the loans to cash. For other over-value loans, EVANS would purchase vehicles and re-title them. EVANS promised to pay the SOI $1,000 for every false identification card the SOI produced. Location data from EVANS' telephone (Number SAl 7-403M; Central District of California) showed that EVANS repeatedly traveling from Birmingham, Alabama to various car dealerships and financial institutions in Atlanta, Georgia. EVANS told the SOI that he closed on two vehicle loans.

b.     Credit Card Scheme: EVANS conspired to use customer profile information provided by William JENNINGS (JENNINGS), an employee of Wells Fargo Bank (WFB) in Phoenix, Arizona, to conduct fraudulent transfers from private lines of

credit. EVANS promised that each individual would receive one-third of the fraudulent proceeds for their assistance. EVANS unsuccessfully attempted to conduct transfers from two account numbers provided by JENNINGS.

c.     Second Loan Scheme: EVANS conspired to provide victims' identifications, pay stubs, credit files, and other information to an individual known as "Craig," who was located in the Phoenix metro area. The purpose of the information was to obtain loans using the victims' information and EVANS suggested that he would receive 50% of the fraudulent proceeds, "Craig" would receive 35%, and the SOI would receive 15%.

17.     During a phone call on November 30, 2017, EVANS told the SOI that he was driving a Maserati. On December 1, 2017, EVANS stated that he lived within two to three hours of "A," which based on the context of the other recorded conversations, was a reference to Atlanta, Georgia. On December 8, 2017, EVANS stated "it is snowing down here in Alabama."

18.     Based on GPS coordinates for the phone utilized by EVANS during the recorded calls, it was determined that it was generally located between 4341 and 4439 Chesapeake North, Birmingham, Alabama 35242 (SA17-403M; District of Alabama). On December 19, 2017, law enforcement officers observed a black Maserati parked in the vicinity of 4401 and 4402 Chesapeake North, Birmingham, Alabama.

19.     The property at 4402 Chesapeake, North Birmingham, Alabama was leased to EVANS under the name J.R.B. EVANS utilized an Ohio driver's license in the name of J.R.B. to obtain the lease. The paperwork also listed the number utilized by EVANS as the contact number and the Maserati bearing Arizona license plate CDC4935. Postal records further indicated that an individual named J.B. received mail to the address.

20.     On January 4, 2018, EVANS was observed driving the Maserati to the parking lot adjacent to 4402 Chesapeake, North Birmingham, Alabama. EVANS exited the Maserati and entered that residence. Tracking information for EVANS' phone indicated that it was located in the proximity of that residence through the next day.

21.     On January 31, 2018, pursuant to search warrant 18-33 in the Northern District of Alabama, two cellular devices and numerous documents were seized, including an additional set of eighty (80) BOA account summary printouts similar to (but not duplicates of) the documents found in EVANS' possession during his June 2017 arrest. The seized items also included the Ohio Driver's License and a Social Security card bearing the name J.R.B.

22.     On October 9, 2018, Agents executed a search of EVANS' two cellular phones seized from his residence at 4402 Chesapeake, North Birmingham, Alabama on January 31, 2018 pursuant to 18-7342MB and 18-7342MB, District of Arizona. Among other findings, evidence of the following was discovered:

    a.  Account take-over scheme: EVANS coordinated co-conspirators to affect the transfer of $21,000 dollars to a Citibank account opened by Lacresha TUGGLE for the purpose of the scheme. In addition to various text conversations related to scheme, TUGGLE photo documented each of her actions while conducting the scheme which she sent to EVANS for tracking purposes. These include account screenshots, Cashier's Checks and deposit slips used to pay recipients the proceeds of the scheme, including EVANS.

    b.  Credit card cash transfer scheme: Credit card fraud involving cash transfers from stolen credit card accounts. EVANS received multiple bank account and routing numbers from various co-conspirators. These accounts were used in order to receive and disperse the transferred funds.

    c.  Identity theft scheme: EVANS exchanged victim PII with various associates in order to build what they refer to as "profiles" for the victims. These were then used to secure loans and lines of credit in the names of those victims. Participants utilized this information to create fraudulent identification documents including Driver's Licenses, Social Security cards and documents to establish credit such as utility bills.

23.     On February 9, 2021, Agents interviewed Danny SALAZAR, a former

associate and business partner of EVANS. SALAZAR admitted that he had created fraudulent credit cards and checks at the request of EVANS. SALAZAR stated that he utilized credit card and checking account information provided by EVANS which had been obtained from another associate of EVANS that was employed at a bank.

24.     On that same date, SALAZAR surrendered property that included a card printer, an imprinting device, an embossing device and 122 blank plastic cards to Agents. Two of the plastic cards had printing on one side that appeared identical to the back of Bank of America credit cards. Investigators discovered that the metallic foil roll used in the embossing device included the impressions of previously embossed text. The pattern of text on the foil matched the format of raised characters found on credit cards. At least 95 different impressions consistent with a credit card were found. Twenty-one (21) of these included the name "R. EVANS" and eight (8) included the name "Robert EVANS." Records checks indicated that all the account numbers were consistent with Bank of America credit card accounts.

25.     The devices described in Attachment A have been held in evidence since EVANS' arrest on June 7, 2017. The initial warrant (SW2017-005968; Maricopa County Superior Court) was executed in furtherance of both federal (Western District of New York) and state (Maricopa County, Arizona) narcotics trafficking investigations. On January 3, 2020, EVANS was convicted of Conspiracy to Possess with Intent to Distribute 1 Kilogram or More of Heroin in Western District of New York Case No. 1:17CR00136-003. EVANS is currently serving a term of supervised release in the W.D.N.Y. case. On March 3, 2021, Maricopa County Superior Court Case No. CR2017-126379 was dismissed without prejudice on motion of the Maricopa County Attorney's Office. Your Affiant believes it prudent to submit this request to specifically support the ongoing investigation into violations of bank fraud, identity theft, money laundering, conspiracy, and other related activities.

**COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS**

26.     As described above and in Attachment B, this application seeks permission

to search and seize records that might be found on the Subject Devices, in whatever form they are found.  Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

27.     Based on knowledge, training and experience, your Affiant submits that for the computer or storage medium, to include cellular telephones, listed in Attachment A, there is probable cause to believe records will be stored on these telephones, computers, or storage medium, for at least the following reasons:

a.  Computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet.  Electronic files downloaded to a storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.  Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special

software is typically required for that task.  However, it is technically possible to delete this information.

d.  Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

28.      As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when.  There is probable cause to believe that this forensic electronic evidence will be on any storage medium located in the search locations described in above and in Attachment A because:

a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers, email programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.  Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b. As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience,

information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as

it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

f. As described above, a computer (including cellular telephone and other electronic devices) is an instrumentality of the crime because it is used as a means of committing the criminal offense as well as likely to be a storage medium for evidence of crime. From training and experience, your Affiant believes that a computer used to commit a crime of this type may contain: data

that is evidence of how the computer was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

29.     Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant.  The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

## CONCLUSION

30.    Based on the foregoing, your Affiant respectfully submits there is probable cause to believe that the Subject Devices contain evidence and instrumentalities of violations of bank fraud, identity theft, money laundering, conspiracy and other related activities, in violation of 18 U.S.C. §§ 1028, 1028A, 1029, 1030, 1344, 1349, 1644, and 1957.

31.    Accordingly, your Affiant requests the Court to issue a search warrant for the Subject Devices, more specifically described in Attachment A, authorizing the search of the items described in Attachment B.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

JONATHAN H ABEND  Digitally signed by JONATHAN H ABEND
Date: 2021.03.18 14:37:32 -07'00'

Jonathan H. Abend
Special Agent
Homeland Security Investigations

Sworn to before me telephonically this __18__ day of March, 2021

HONORABLE MICHELLE H. BURNS
United States Magistrate Judge